UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case: 2:23-cr-20672 |
| | Judge: Berg, Terrence G. |
| Plaintiff, | MJ: Stafford, Elizabeth A. |
| | Filed: 12-05-2023 |
| v. | Violations: |
| | 21 U.S.C. § 331(a) |
| D-1 ABIGAIL WEXLER, | |
| Defendant. | |
| _____/ | |

**INFORMATION**

THE UNITED STATES ATTORNEY CHARGES

**GENERAL ALLEGATIONS**

At all times relevant to this Information:

1. The United States Food and Drug Administration ("FDA") is the agency of the United States responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"). The FDA's primary purpose in enforcing the provisions of the FDCA is to protect the public health. The FDA's responsibilities include regulating the manufacturing, labeling, and distribution of drugs shipped or received in interstate commerce. The responsibilities of the FDA include preventing drugs that are unapproved for marketing or sale, and those that are improperly packaged and labeled, from reaching the marketplace.

2. Under the FDCA, the term "drug" was defined as among other things, articles intended for the use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans, 21 U.S.C. § 321(g)(1)(B); articles intended to affect the structure or any function of the body of humans, 21 U.S.C. § 321(g)(1)(C); and articles intended for use as components of other drugs, 21 U.S.C § 321(g)(1)(D).

3. The FDCA required every person engaged in the manufacture, preparation, propagation, compounding, or processing of any drugs immediately to register his name, place of business, and all such establishments owned or operated by such person. 21 U.S.C § 360(c). The terms "manufacture, preparation, propagation, compounding, or processing" include repackaging or otherwise changing the container, wrapper, or labeling of any drug during the time between the original manufacture and the final sale to the ultimate consumer or user. 21 U.S.C. § 360(a)(1).

4. Under the FDCA, the term "label" was defined as a display of written, printed, or graphic matter upon the immediate container of any article. 21 U.S.C. § 321(k). The term "labeling" was more broadly defined and included all labels and other written, printed, or graphic matter upon any article, including drugs, or on any of its containers or wrappers, or accompanying such article. 21 U.S.C. § 321(m).

5. The FDCA prohibited introducing into interstate commerce, delivering for introduction into interstate commerce, or causing the introduction or delivery for

introduction into interstate commerce of a drug that was misbranded. 21 U.S.C § 331(a).

6. A drug was misbranded under the FDCA if, among other things:

    a. it was manufactured, prepared, propagated, compounded, or processed in an establishment in any State not duly registered with the Secretary of Health and Human Services pursuant to 21 U.S.C. § 360 (21 U.S.C. 352(o)); or

    b. its labeling lacked adequate directions for use (21 U.S.C. § 352(f)(1)). The FDCA defined "adequate directions for the use" as "directions under which the layman can use a drug safely and for the purposes for which it is intended." 21 C.F.R. § 201.5.

### *Abigail Wexler*

7. At all times relevant to this Information, the defendant **Abigail Wexler** resided in the Eastern District of Michigan.

8. From in or about August 2022 through at least November 2022, **Abigail Wexler** was the owner and operator of Nootro-Fix and Pink Pill Pharmacy, businesses **Wexler** ran from her residence in the Eastern District of Michigan. Nootro-Fix and Pink Pill Pharmacy operated as pharmacies to distribute hormone therapy drugs to individuals seeking to receive hormone therapy.

9. **Abigail Wexler** was not licensed as a doctor, pharmacist, or nurse.

10.     **Abigail Wexler** ran Nootro-Fix and Pink Pill Pharmacy on the internet through different social media platforms, such as Discord, Reddit, and Signal. When using social media applications, **Wexler** went by "Spiffy." Individuals who wished to begin taking hormone therapy drugs would contact **Wexler** or "Spiffy," and obtain information about specific hormone therapy drugs and the process for ordering, paying for, and receiving hormone therapy drugs directly from **Wexler**. **Wexler** processed orders for hormone therapy drugs via social media platforms or through e-mail communications.

11.     **Abigail Wexler** primarily ordered Active Pharmaceutical Ingredients (API), in micronized powder form, from China by using Alibaba.com, which she then used to manufacture hormone therapy drugs.  After the hormone therapy drugs were imported into the United States, **Wexler** received the drugs through a third-party warehouse.  **Wexler** then used manufacturing equipment, at her residence in the Eastern District of Michigan, to convert the micronized powders into pills, capsules, tablets, injectable, sublingual oils, suppositories, and transdermal sprays for use by individuals.

12.     **Abigail Wexler** manufactured and distributed the following hormone therapy drugs to individuals in the United States and elsewhere: estradiol, estradiol cypionate; estradiol enanthate; estradiol undecylate; bicalutamide; cyproterone acetate; and progesterone.

13. After **Abigail Wexler** manufactured these drugs into different forms for distribution, **Wexler** charged her customers a particular price for each manufactured drug. **Wexler** then used the mail (USPS, UPS, or others) to ship the drugs directly to consumers.

14. **Wexler** did not require a prescription for particular drugs.

15. **Abigail Wexler** did not include any documents or directions for how to use the drugs in the packages she mailed to her customers. Rather, **Wexler** provided directions for how to use the drugs through electronic communications with her customers.

16. Customers of Nootro-Fix and Pink Pill Pharmacy paid for the drugs through online payment platforms like PayPal, CashApp, Venmo, and through cryptocurrency exchanges.

17. **Abigail Wexler** purchased equipment and supplies to manufacture the hormone therapy drugs throughout the United States and foreign countries. This includes purchasing a tablet press, flowing agents, and binding agents used in the production of tablets and capsules.

18. **Abigail Wexler** controlled, directed, and was responsible for all aspects of the Nootro-Fix and Pink Pill Pharmacy businesses, including identifying and communicating with foreign drug suppliers oversees, purchasing the drugs for import into the United States, operating on social media platforms to obtain

consumers of the drugs, manufacturing, packaging, and distributing the drugs to consumers, making online sales of the drugs to consumers, shipping packages containing the drugs to consumers, and managing the financial affairs of Nootro-Fix and Pink Pill Pharmacy.

19. **Abigail Wexler**'s residence in the Eastern District of Michigan, was not registered with the Secretary of Health and Human Services as a facility that manufactures, prepares, propagates, compounds, and processes drugs.

## COUNTS ONE AND TWO
### Introducing Misbranded Drugs into Interstate Commerce
### 21 U.S.C. § 331(a) and 333(a)(1)

D-1 Abigail Wexler

20. The allegations in paragraphs 1 through 19 are incorporated into this count by reference.

21. From on or about August 2022 to on or about November 29, 2022, in the Eastern District of Michigan, and elsewhere, defendant, Abigail Wexler introduced and delivered for the introduction into interstate commerce, and caused to be introduced and delivered for introduction into interstate commerce, the drugs: estradiol, estradiol cypionate; estradiol enanthate; estradiol undecylate; bicalutamide; cyproterone acetate; and progesterone, which was misbranded in that:

    a. its labeling lacked adequate directions for use (21 U.S.C. § 352(f)(1); and

b. it was manufactured, prepared, propagated, compounded, and processed in an establishment in any State not duly registered with the Secretary of Health and Human Services pursuant to Title 21, United States Code, Section 360 (21 U.S.C. § 352(o)).

| Count | Approximate Date of Shipment | Drug Name | Shipped From | Shipped to |
|---|---|---|---|---|
| 1 | November 21, 2022 | Progesterone and Estradiol | Michigan | E.F in Huntington Beach, CA |
| 2 | November 28, 2022 | Estradiol and Cyproterone Acetate | Michigan | S.B. in Philadelphia, Pennsylvania |

All in violation of Title 21, United States Code, Sections 331(a), 352(f)(1), 352(o), and 333(a)(1).

## FORFEITURE ALLEGATION

22. The allegations contained in this Information are hereby incorporated and realleged by reference for the purpose of alleging forfeiture pursuant to Title 21, United States code, Section 334 , Title 28, United States Code, Section 2461©, and Title 18, United States Code, Section 982(a)(7).

23. The United States hereby gives notice to defendant that, upon conviction of the offense alleged in Count One or Two of this Information, the United States will seek forfeiture under Title 21, United States Code, Section 334

and Title 28, United States Code, Section 2461(c), of any property introduced into interstate commerce in violation of Sections 331 and 333, or the value thereof.

24. The United States also gives notice to defendant that, upon conviction of the offense alleged in Count One or Two of this Information, the United States will seek forfeiture under Title 18, United States Code, Section 982(a)(7), of any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

25. The United States also intends to seek a forfeiture money judgment, in an amount to be determine, at or prior to sentencing, representing the total value of the proceeds subject to forfeiture.

26. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of Defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).

DAWN N. ISON
United States Attorney

REGINA MCCULLOUGH
Chief, Health Care Fraud Unit

JIHAN WILLIAMS
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226

Dated: December 5, 2023

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number: |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based on **LCrR 57.10(b)(4)**[1]: | |
| ☐Yes ☒No        AUSA's Initials: *JW* | |

**Case Title:** USA v. Abigail Wexler

**County where offense occurred:** St. Clair County

**Offense Type:** Misdemeanor

Information -- **no** prior complaint

**Superseding Case Information**

**Superseding to Case No:** _____   **Judge:** _____

**Reason:**

| **Defendant Name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

December 5, 2023
Date

*[signature]*
Jihan Williams
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
jihan.williams@usdoj.gov
(313) 226-9520
Bar #: P77686

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.